# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMAAR JEROME WILLIAMS,

    Petitioner,

vs.

JO GENTRY,[1] *et al.*,

    Respondents.

2:05-cv-00879-APG-CWH

**ORDER**

On October 19, 2016, the United States Court of Appeals for the Ninth Circuit entered a judgment vacating this court's order dismissing petitioner's ineffective assistance of counsel claims under Grounds Two and Three(a-c) and remanding the case so that this court can reconsider the procedural default of those claims in light of *Martinez v. Ryan*, 566 U.S. 1 (2012). ECF No. 100. Specifically, the court of appeals directed this court to "evaluate whether further factual development is needed and determine whether [the underlying ineffective assistance of counsel] claims are substantial under the appropriate standard." *Id*. at 4. In furtherance of the Ninth Circuit's mandate (ECF No. 101), this court allowed petitioner Williams to submit points and authorities and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Jo Gentry, the Warden of Southern Desert State Prison, has been substituted for previous respondent, Jackie Crawford, the former Warden of High Desert State Prison.

to proffer any evidence in support his claims under *Martinez*. ECF No. 103. For the reasons that follow, this court concludes that none of the ineffective assistance of counsel claims are "substantial" for the purposes of *Martinez*.

As an initial matter, a Supreme Court decision issued subsequent to the Ninth Circuit's remand in this case holds that *Martinez* is confined to defaulted claims of ineffective assistance of trial counsel and does not extend to defaulted claims of ineffective assistance of appellate counsel. *See Davila v. David*, 137 S. Ct. 2058, 2070 (2017). Because Grounds Three(a), (b), and (c) are all ineffective assistance of appellate counsel claims, petitioner cannot utilize *Martinez* to excuse the default of those claims. Thus, this court need not determine whether those claims are "substantial" for the purposes of *Martinez*. *See Insurance Group Committee v. Denver & R. G. W. R. Co.*, 329 U.S. 607, 612 (1947) ("When matters are decided by an appellate court, its rulings, *unless reversed by it or a superior court*, bind the lower court." (Emphasis added.)).

As to whether his ineffective assistance of trial counsel claims are "substantial," Williams must demonstrate that they have "some merit." *See Martinez*, 566 U.S. at 14 (citing to *Miller–El v. Cockrell*, 537 U.S. 322 (2003), which describes the standards for certificates of appealability to issue). The standard for issuing a certificate of appealability involves a threshold inquiry into whether the petitioner has shown "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (quoting *Miller–El*, 537 U.S. at 326) (internal quotation marks and alterations omitted)). "Stated otherwise, a claim is 'insubstantial' if 'it does not have any merit or . . . is wholly without factual support.'" *Id*. (quoting *Martinez*, 566 U.S. at 15-16).

Ineffective assistance of counsel (IAC) claims are analyzed under the two-prong test propounded in *Strickland v. Washington*, 466 U.S. 668 (1984). That is, a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell

below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

*Ground Two(a)*

In Ground Two(a), Williams claims that his trial counsel provided ineffective assistance by not moving to sever the charges in his case. The charges arose out of events that occurred in a Las Vegas mobile home park over a two-day period. On November 7, 2000, an assailant shot and killed Reggie Ezell and shot at, but missed, Darin Archie. On November 8, 2000, an assailant shot James Polito and Ricky Policastro, both of whom survived. In relation to those events, Williams was convicted of one count of murder with the use of a deadly weapon, three counts of attempted murder with the use of a deadly weapon, and one count of conspiracy to commit murder. According to Williams, reasonably competent counsel would have moved to the sever the charges arising from the November 8 incident and that severance of the charges would have resulted in a more favorable outcome.

Under Nevada law, multiple offenses "may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are "[b]ased on the same act or transaction; or [b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Nev. Rev. Stat. § 173.115. Charges are "connected together if evidence of either charge would be admissible for a relevant, nonpropensity purpose in a separate trial for the other charge." *Rimer v. State*, 351 P.3d 697, 703 (Nev. 2015). "Even if charges could otherwise be properly joined, severance may still be mandated where joinder would result in unfair prejudice to the defendant." *Weber v. State*, 119 P.3d 107, 121 (Nev. 2005). However, "[t]o establish that joinder was [unfairly] prejudicial 'requires more than a mere showing that severance might have made acquittal more likely.'" *Id.* (citations omitted).

Here, there is ample evidence that all the charges were based on acts or transactions connected together or constituting parts of a common scheme or plan. According to his own testimony at trial, Williams had a verbal altercation with Archie on the afternoon November 7, 2000, the cause of which was Williams attempting to confront Polito while Polito was working on the door to Archie's mobile home. Additional evidence established the following. Upon leaving that afternoon, Williams stated that he would be coming back. Later that evening, Williams knocked on the door of Polito's mobile home then walked in the direction of Archie's mobile home, with the shooting at Archie's home occurring shortly thereafter. Witnesses, including Archie, identified Williams as the shooter. The following night, Jules, an acquaintance of Williams's, went to Polito and Policastro's mobile home and questioned them about who talked to police about the prior night's shooting. While in the home, Jules communicated with someone via mobile phone, indicating how many people were currently present. Just as Jules exited the trailer, Williams entered the trailer and shot Polito and Policastro.

Even if the foregoing is not sufficient to establish that all the charges constituted part of a common scheme or plan, the charges were "connected together" because evidence of any of the charges would have been admissible for a relevant, non-propensity purpose in a separate trial for any of the other charges. Moreover, Williams fails to demonstrate that he was *unfairly* prejudiced by the joinder. Accordingly, he has not shown that a motion to sever would have had any chance for success. Thus, his IAC claim premised on his trial counsel failing to file such a motion is not "substantial" for the purposes of *Martinez*.

*Ground Two(b)*

In Ground Two(b), Williams claims that his trial counsel provided ineffective assistance by not moving to suppress Williams's statement to the police or to argue to the jury that it was involuntary. Though he did not include such allegations in his habeas petition, Williams argues in his *Martinez* brief on remand that the circumstances surrounding his arrest support a finding that his

confession was coerced. However, the only evidence he proffers to substantiate this claim is a declaration from a woman named Dorothy Howell, who states that she was present when Williams was arrested. ECF No. 106-3. Williams also alleges that he believed he was going to get some benefit from telling the police what they wanted to hear and that he was represented by counsel at the time of the confession, but the police failed to contact his attorney.

Howell's declaration provides little support for Williams's IAC claim. The circumstances surrounding his capture are not necessarily pertinent to whether his subsequent confession was the product of undue coercion. *See Greenawalt v. Ricketts*, 943 F.2d 1020, 1027 (9th Cir. 1991). Moreover, the declaration provides details as to how Howell and her daughter were treated by the police, but does not describe how Williams was treated.

Similarly, Williams's belief that he would benefit from confessing to the police adds nothing to his claim of coercion given the absence of any evidence that police made any false promises or offered any improper inducements. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause."). Also, Williams has not established that the attorney referred to in Ground Two(b), Steve Altig, represented Williams in relation to the matter at hand. Accordingly, the police were under no obligation to contact Altig before interrogating Williams about the events giving rise to the charges in this case. *See Texas v. Cobb*, 532 U.S. 162 (2001).

For the foregoing reasons, Ground Two(b) has no merit.

*Ground Two(c)*

In Ground Two(c), Williams claims that his trial counsel provided ineffective assistance by not moving for a mistrial when one of the victim's family members "made a scene" during opening arguments. The transcript of the trial indicates that, as part of his opening argument, the prosecutor displayed a photograph of Reggie Ezell and, as the prosecutor began to describe the manner in

which Ezell was killed, an audience member left the courtroom crying. ECF No. 38, p. 15-16. The transcript also indicates that, just prior to the conclusion of proceedings that same day, Williams's counsel sought to clarify the event for the record. ECF No 38-4, p. 45. In doing so, he noted that "one of the family members began screaming and the [sic] yelling and left the courtroom." *Id*. Counsel did not, however, move for a mistrial.

The foregoing constitutes the entirety of the evidence in the record regarding the incident. There is no indication that the outburst was directed at Williams or the jury or that the State had any control over it. Although the audience member was apparently related to the victim, he or she was also a member of the public who had a right to observe the courtroom proceedings. He or she was not called as a witness, and no further incidents occurred. Given these circumstances, there was virtually no chance that the trial court would have granted a mistrial. *See Johnson v. State*, 148 P.3d 767, 777 (Nev. 2006).

Thus, Williams cannot show prejudice sufficient for this court to determine that Ground Two(c) has "some merit."

*Ground Two(d)*

In Ground Two(d), Williams claims that his trial counsel provided ineffective assistance by failing to call an eyewitness identification expert at trial. According to Williams, such an expert could have "dramatically assisted" in his defense because of the "varying nature of the eyewitness testimony." ECF No. 36, p. 9. He also alleges that such an expert could have testified "about the effects of stress, gun focus, suggestibility, and other issues with identification." *Id*.

While Williams makes broad claims about the potential benefit of presenting the testimony of an eyewitness identification expert, he does not demonstrate how such an expert would have effectively challenged the particular positive identifications in his case. That is, Williams does not identify an expert who would have been willing to testify in his case, much less proffer any evidence (such as a report or a declaration) showing how he or she could have undermined the reliability of

the witnesses who identified Williams as the shooter. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (noting that speculation that an expert would have testified on the defendant's behalf is not enough to establish prejudice). While recognizing that the "some merit" standard is not high, this court cannot find Ground Two(d) substantial in the absence of any evidence that Williams was prejudiced due to counsel's failure to call an eyewitness identification expert at trial.

*Ground Two(e)*

In Ground Two(e), Williams claims that his trial counsel provided ineffective assistance by not calling alibi witnesses at trial. In support of this claim, Williams identifies two of his cousins, Blanche Williams and Dorrell Porter, as potential witnesses who could have testified that he was not at the mobile home park on the evening of November 8, 2000. And, with his *Martinez* brief on remand, Williams proffers a declaration from each that states Williams was with them at home at the relevant time. ECF No. 106-1/106-2.

Both declarations were executed in February 2017, more than sixteen years after the night in question and almost ten years after Williams filed his second amended habeas petition in this proceeding. That alone is reason to doubt their reliability, but the declarations also conflict with the state court record. In her declaration, Blanche Williams recounts her efforts to contact Williams's attorney, "Mr. Denue," however, Denue served as Williams's counsel on appeal and was not his trial counsel.[2] ECF No. 40-6. In his declaration, Dorrell Porter states that Williams arrived home at 10:00 pm on November 7, 2000, where he remained for the rest of the night, however, Williams testified at trial that he was making "a couple rounds through the trailer parks" at that time, which, according to his further testimony, was prior to him then meeting a friend, who smoked marijuana with him and got into the altercation that resulted in Ezell getting shot. ECF No. 39-5, p. 26-37.

---

[2] The court notes that Blanche Williams also provided a declaration in Williams's state court post-conviction proceedings that includes very similar allegations regarding her efforts to contact Mr. Denue to obtain Williams's case file after his direct appeal. ECF No. 68-21.

Conspicuously absent from Williams's habeas petition and his *Martinez* brief are any allegations that he notified counsel prior to trial about the existence of either of these purported alibi witnesses or that counsel otherwise had reason to know of their existence. Certainly, if Williams spent the evening of November 8, 2000, with two witnesses who could have vouched for his whereabouts at the time of the shooting, he would have informed counsel of such. Yet, he makes no allegation to that effect. Moreover, it strains to credulity to accept that trial counsel, who otherwise mounted a vigorous defense on Williams's behalf, would wholly disregard readily-available exculpatory evidence. In sum, Claim Two(e) lacks credible factual support and, therefore, has no merit.

For the foregoing reasons, this court concludes that Williams has not shown that any of his IAC claims are "substantial" for purpose of excusing his procedural default under *Martinez*. Williams asks for an evidentiary hearing to support his claims. However, he does not identify with any specificity the evidence he would present beyond that which he has already submitted for consideration. Accordingly, the court denies his request of a hearing. *See Runningeagle v. Ryan*, 825 F.3d 970, 990 (9th Cir. 2016) (holding that an evidentiary hearing was not required because the "documentary evidence submitted fully presented the relevant facts," and, therefore, "oral testimony and cross-examination [were] not necessary").

IT IS THEREFORE ORDERED that Grounds Two and Three (a-c) of the second amended petition (ECF No. 36) are DISMISSED with prejudice as procedurally defaulted.

IT IS FURTHER ORDERED that the Clerk shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

Dated: November 20, 2017.

_____
UNITED STATES DISTRICT JUDGE